IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| THE NATIONAL ASSOCIATION ) <br> FOR THE ADVANCEMENT OF ) <br> COLORED PEOPLE, INC.; THE ) <br> NATIONAL ASSOCIATION FOR ) <br> THE ADVANCEMENT OF ) <br> COLORED PEOPLE, INC., ) <br> CONWAY BRANCH; LEE ) <br> EDWARDS; LETRENA ) <br> EDWARDS; LEON HINES; and ) <br> JOEY HINES, ) <br> ) <br>     Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> MOLLY DARCY, INC., d/b/a ) <br> MOLLY DARCY'S ON THE ) <br> BEACH, ) <br> ) <br>     Defendant. ) <br> ) | Civil Action No.: 4:11-cv-01293-RBH <br><br> **ORDER** |

This matter is before the Court after Defendant Molly Darcy, Inc., filed a motion to dismiss the complaint filed by the above-captioned Plaintiffs. Defendant also filed a motion to strike the report and trial testimony of Plaintiffs' expert witness, Tucker W. Main. After reviewing Defendant's motions and the parties' briefs,[1] the Court denies Defendant's motion to dismiss; however, the motion to strike is granted in part and denied in part.

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

Plaintiffs, a group including both individuals and organizations, filed this action on May 27, 2011, alleging violations under Title II of the Civil Rights Act of 1964, 42 U.S.C. § 2000a; under 42

---

[1] Under Local Civil Rule 7.08 (D.S.C.), "hearings on motions may be ordered by the Court in its discretion. Unless so ordered, motions may be determined without a hearing." The Court finds a hearing is not necessary.

U.S.C. § 1981; and under South Carolina's public accommodations statutes, S.C. Code Ann. §§ 45-9-10 to -120.  Their claims arise from the decision of Defendant, which operates a beachfront Irish-themed restaurant and bar in North Myrtle Beach, South Carolina, called Molly Darcy's on the Beach, to close the restaurant during the days leading up to and including Memorial Day,[2] a period coinciding with a predominantly African-American motorcycle festival called "Black Bike Week." Plaintiffs allege intentional racial discrimination by Defendant in its decision to close.  First Am. Compl. 10-11, ECF No. 6.  Specifically, they assert that, while the restaurant was closed for business during several Black Bike Weeks, it was always open during "Harley Week," a similar motorcycle festival that is held a week prior to Black Bike Week but that is "almost exclusively" attended by white motorcycle enthusiasts. *Id.* at 6.  Moreover, Plaintiffs claim Black Bike Week is the only time of the year when the restaurant closes during its regular business hours and that, while it displayed a sign that it was closed for renovations, "no renovations . . . occurred." *Id.* at 9-10.  The four individual plaintiffs, all African-Americans, each allege that they would have dined at Molly Darcy's on the Beach but were prevented from doing so.  *Id.* at 3-4, 7.

Defendant filed its motion to dismiss, arguing (1) that the organizational Plaintiffs, the National Association for the Advancement of Colored People ("NAACP") and its Conway, South Carolina, branch ("Conway Branch"), lack standing to sue, (2) that all Plaintiffs lack the standing to seek an injunction, and (3) that all Plaintiffs fail to state a claim upon which relief can be granted. Memo. in Supp. of Mot. to Dismiss, ECF No. 50-1.  Defendant also filed a motion to strike the report and trial testimony of Plaintiff's expert witness, Tucker W. Main.  It argues Main's expert opinions are both unreliable and irrelevant, and thus his testimony should not be admitted at trial.

---

[2] Plaintiff's complaint specifically cites closures during the 2008, 2009, and 2010 Memorial Day weekends, but alleges the restaurant closed during every Black Bike Week since it opened in 2005. First Am. Compl. 7-10, ECF No. 6.

2

Memo. in Supp. of Mot. to Strike, ECF No. 48-1.  Plaintiffs filed responses to both motions, and Defendant, in turn, replied.  Their arguments are now before the Court.

## MOTION TO DISMISS: LACK OF STANDING

Defendant argues Plaintiffs NAACP and Conway Branch lack both "associational" standing and "organizational" standing to bring claims against Defendant.  Moreover, it argues all Plaintiffs lack standing to seek an injunction because they have failed to allege sufficient facts "to demonstrate a real or immediate threat that they will be wronged again."  The Court finds, however, that Plaintiffs NAACP and Conway Branch have standing to sue and that all Plaintiffs have standing to seek an injunction.

The concept of standing is derived from the Constitution's cases or controversies requirement. U.S. Const. art. III, § 2.  "A justiciable case or controversy requires a plaintiff [who] has alleged such a personal stake in the outcome of the controversy as to warrant his invocation of federal court jurisdiction and to justify exercise of the court's remedial powers on his behalf." *Planned Parenthood of S.C. v. Rose*, 361 F.3d 786, 789 (4th Cir. 2004) (internal quotation marks omitted) (alteration in original).  A plaintiff must therefore provide evidence to support the conclusion that: (1) "the plaintiff . . . suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical"; (2) "there [is] a causal connection between the injury and the conduct complained of"; and (3) "it [is] likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (citations and internal quotation marks omitted).

"An organizational plaintiff may establish standing to bring suit on its own behalf when it seeks redress for an injury suffered by the organization itself." *White Tail Park, Inc. v. Stroube*, 413

F.3d 451, 458 (4th Cir. 2005) (citing *Warth v. Seldin,* 422 U.S. 490 (1975) (explaining that an organizational plaintiff may have standing to sue on its own behalf "to vindicate whatever rights and immunities the association itself may enjoy")); *see also Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982). An organizational plaintiff may also establish associational standing to bring an action in federal court "on behalf of its members when: (1) its members would otherwise have standing to sue as individuals; (2) the interests at stake are germane to the group's purpose; and (3) neither the claim made nor the relief requested requires the participation of individual members in the suit." *Friends for Ferrell Parkway, LLC v. Stasko,* 282 F.3d 315, 320 (4th Cir. 2002); *see also Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 343 (1977).

In deciding a motion under Federal Rule of Civil Procedure 12(b)(1) to dismiss for lack of subject matter jurisdiction, the Court " 'may consider evidence outside the pleadings without converting the proceeding to one for summary judgment.' " *Stroube*, 413 F.3d at 459 (quoting *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991)). Because the standing elements are "an indispensable part of the plaintiff's case, each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation." *Lujan*, 504 U.S. at 561 (explaining that "[a]t the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice").

Defendant hangs its associational standing argument first on the assertion "that a suit for money damages is not an appropriate candidate for associational standing." Memo. in Supp. of Mot. to Dismiss 21. It also moves to dismiss Plaintiffs NAACP and Conway Branch on prudential standing principles, namely on the fact that "[n]ot only did [they] not even attempt access to the restaurant, but after a radio campaign by the NAACP to encourage reports of discrimination taking

4

place during Black Bike Week, not a single member of the NAACP has filed a claim of discrimination against Defendant." *Id.* at 21-22.  However, to support its allegations of standing, Plaintiffs NAACP and Conway Branch point out that they only seek injunctive and declaratory relief under § 2000a and S.C. Code Ann. § 45-9-30.  Memo. in Opp'n to Mot. to Dismiss 29, ECF No. 55.  Moreover, they provide an affidavit from Tiffany Andrews, an African-American and a member of the NAACP, who attests that she attempted to dine at Defendant's restaurant during Black Bike Week in 2009 and discovered that the restaurant was closed. Tiffany Andrews Aff. 2, ECF No. 55-8.  Andrews also stated that she intends to dine at the restaurant during future Black Bike Weeks. *Id.* at 2.

Given Andrews's affidavit, the Court finds Plaintiffs NAACP and Conway Branch meet the requirements of associational standing. First, Andrews's claims the same discriminatory conduct alleged by the individual Plaintiffs, whose standing the Defendant does not challenge.  Second, as Plaintiffs NAACP and Conway Branch note, Defendant does not challenge their associational standing on the basis that this action is not germane to their mission to "eliminat[e] discrimination in all aspects of society." Memo. in Opp'n to Mot. to Dismiss 28 n.10.  Finally, at least one of the claims Plaintiffs NAACP and Conway Branch assert, the § 2000a claim for declaratory and injunctive relief, does not require the participation of its individual members.  The fact that Andrews is not a party to this action is irrelevant as long as Plaintiffs NAACP and Conway Branch do not seek damages on her behalf. *See Retail Indus. Leaders Ass'n v. Fielder*, 475 F.3d 180, 187 (4th Cir. 2007).  Therefore, the Court finds Plaintiffs NAACP and Conway Branch have associational standing and are properly joined to seek declaratory and injunctive relief on behalf of

their members.[3] Because the Court finds the organizational plaintiffs have associational standing in this action, a determination as to whether they have organizational standing is unnecessary.[4]

Defendant also contends *all* Plaintiffs lack standing to seek injunctive relief.[5] Citing *City of Los Angeles v. Lyons*, 461 U.S. 95 (1983), it maintains Plaintiffs "have not alleged facts sufficient to demonstrate a real or immediate threat that they will be wronged again." Memo. in Supp. of Mot. to Dismiss 26. The circumstances in *Lyons*, however, are distinguishable from the circumstances presented here. *Lyons* relied on two previous opinions, *O'Shea v. Littleton*, 414 U.S. 488 (1974), and *Rizzo v. Goode*, 423 U.S. 362 (1976), which involved requests for injunctions against unlawful police conduct. *Lyons*, 461 U.S. at 102-05. The Supreme Court focused on the allegations of the complaint, which sought to enjoin the City of Los Angeles from the application of chokeholds by its

---

[3] Having found that Plaintiffs NAACP and Conway Branch have met the requirements for associational standing, the Court finds no basis to dismiss them under the prudential limitation on third-party standing. *See United Food & Commercial Workers Union Local 751 v. Brown Grp., Inc.*, 517 U.S. 544, 552-53 (1996).

[4] Plaintiffs NAACP and Conway Branch are unclear in the complaint about whether they seek statutory damages under § 45-9-30. However, in their response to Defendant's motion, they note that they "*only* seek[] injunctive and declaratory relief . . . on behalf of its members." Memo. in Opp'n to Mot. to Dismiss 29 (emphasis added). Therefore, the specific determination that they are an aggrieved party under § 45-9-30, which would require organizational standing, is not necessary.

[5] Plaintiffs' response argues mostly that the action should not be dismissed on mootness grounds. The Court agrees that this case is not moot because there is not evidence that "[i]ntervening events have not 'irrevocably eradicated the effects of the alleged violation.' " *City of L.A. v. Lyons*, 461 U.S. 95, 101 (1983) (quoting *County of L.A. v. Davis*, 440 U.S. 625, 631 (1979)); *see also Lyons P'ship v. Morris Costumes, Inc.*, 245 F.3d 789, 800 (4th Cir. 2001) (recognizing that defendants face a "heavy burden to establish" that "there is *no* reasonable expectation that the wrong will be repeated"); *Buchanan v. Consol. Stores Corp.*, 217 F.R.D. 178, 189 n.14 (D. Md. 2003) ("A request for injunctive relief is only mooted by the defendant's voluntary conduct if " 'subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur.' " (quoting *Friends of the Earth v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 189 (2000))).

law enforcement officers, and found the complaint fell "far short of the allegations that would be necessary to establish a case or controversy."[6] *Id.* at 105-06.

Here, Plaintiffs allege both intentional racial discrimination by Defendant and that the individual Plaintiffs are likely to return to Molly Darcy's on the Beach. *See id.* at 102 ("Past wrongs [are] evidence bearing on 'whether there is a real and immediate threat of repeated injury.'"). In their response to Defendant's motion, Plaintiffs also provide evidence that a member, Andrews, intends to patronize the restaurant if it is open during Black Bike Week. Andrews Aff. 2. Furthermore, Plaintiffs point to evidence that Defendant would "[m]ostly likely" not close but for this action and "based on the criteria [it] decided on" before the complaints of discrimination. Thomas Snee Dep. 170, ECF No. 55-16. Unlike the plaintiff in *Lyons*, Plaintiffs here sufficiently allege facts, supported by evidence, to establish a ripe case or controversy. *Cf. Buchanan v. Consol. Stores Corp.*, 217 F.R.D. 178, 189 n.14 (D. Md. 2003) ("Defendants' commitment to the new check

---

[6] The Supreme Court stated as follows:

> In order to establish an actual controversy in this case, Lyons would have had not only to allege that he would have another encounter with the police but also to make the incredible assertion either, (1) that *all* police officers in Los Angeles *always* choke any citizen with whom they happen to have an encounter, whether for the purpose of arrest, issuing a citation or for questioning or, (2) that the City ordered or authorized police officers to act in such manner. Although [Lyons] alleged that the City authorized the use of the control holds in situations where deadly force was not threatened, it did not indicate why Lyons might be realistically threatened by police officers who acted within the strictures of the City's policy. If, for example, chokeholds were authorized to be used only to counter resistance to an arrest by a suspect, or to thwart an effort to escape, any future threat to Lyons from the City's policy or from the conduct of police officers would be no more real than the possibility that he would again have an encounter with the police and that either he would illegally resist arrest or detention or the officers would disobey their instructions and again render him unconscious without any provocation.

*Lyons*, 461 U.S. at 105-06.

7

acceptance policy is questionable, having instituted it just several months after the filing of this lawsuit.").

The Court is also guided by the fact that an injunction is the only remedy for violations of § 2000a. *Newman v. Piggie Park Enters.*, 390 U.S. 400, 402 (1968). The foreseeability of places of public accommodation changing their policies in response to the threat of litigation to avoid liability is reasonable, and without the ability to pursue damages, Plaintiffs must pursue some form of remedy to vindicate their rights, as well as the rights of the public. *See id.* ("If [a plaintiff] obtains an injunction, he does so not for himself alone but also as a 'private attorney general,' vindicating a policy that Congress considered of the highest priority.") Defendant's argument that it can effectively strip this Court of subject matter jurisdiction simply by altering its business practices is without merit. The Court is satisfied that Plaintiffs have shown that their injury is more than speculative or hypothetical and finds they have standing to seek an injunction against Defendant's alleged discriminatory conduct.

### MOTION TO DISMISS: FAILURE TO STATE A CLAIM

Defendant contends Plaintiffs failed to state a claim for relief under Federal Rule of Civil Procedure 12(b)(6) in alleging that Defendant's decision to close was discriminatory because it closed during Black Bike Week. Specifically, Defendant argues: "[e]ach of the statutes relied upon requires a showing that Plaintiffs were deprived of a right or accommodation afforded to others. This is not the case; the restaurant, when open, was open to all, and when closed, was closed to all." Memo. in Supp. of Mot. to Dismiss 8.

Rule 12(b)(6) governs motions to dismiss for "failure to state a claim upon which relief can be granted." The purpose of such a motion is to test the sufficiency of a plaintiff's complaint. *See Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012). Rule 8(a)(2) of the Federal Rules of Civil

8

Procedure provides that a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." While this standard "does not require 'detailed factual allegations,' . . . [a] pleading that offers 'labels and conclusions,' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Likewise, "a complaint [will not] suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). Rather, to survive a Rule 12(b)(6) motion to dismiss, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555; *see also Walters*, 684 F.3d at 439 ("[W]hile a plaintiff does not need to demonstrate in a complaint that the right to relief is 'probable,' the complaint must advance the plaintiff's claim 'across the line from conceivable to plausible.'" (quoting *Twombly*, 550 U.S. at 570)). Finally, when ruling on a motion to dismiss, the Court "must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

The parties do not dispute that, here, the analyses under each cause of action are substantially similar.[7] Specifically, in a § 1981 action, "a plaintiff must prove that: (1) he or she is a member of a racial minority; (2) the defendant intended to discriminate on the basis of race; and (3) the discrimination concerned one or more of the activities protected by the statute." *Buchanan*, 217 F.R.D. at 190; *see also Jordan v. Alt. Res. Corp.*, 458 F.3d 332, 345 (4th Cir. 2006) ("[A plaintiff]

---

[7] Both § 2000a and S.C. Code Ann. § 45-9-10 provide that "[a]ll persons shall be entitled to the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodation . . . without discrimination or segregation on the ground of race." Section 1981 provides that "[a]ll persons . . . shall have the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens." It is also "well recognized that [t]he same prima facie test applies in § 1981 cases applies to claims under § 2000a." *Eddy v. Waffle House, Inc.*, 335 F. Supp. 2d 693, 702-03 (D.S.C. 2004) (internal quotation marks omitted) (alterations in original).

must allege that he is a member of a racial minority; that the defendants' [action was taken] *because of [plaintiff's] race*; and that their discrimination was intentional."). "The critical element of a § 1981 claim is the showing of *intentional* discrimination, not merely that the defendant adopted a policy or practice that had a disparate impact upon minorities." *Buchanan*, 217 F.R.D. at 190.

Defendant does not contend that the individual Plaintiffs failed to allege that they are members of a racial minority. Defendant's focus is instead on the undisputed fact that "when Molly Darcy's was open, it was open to all, and when it was closed, it was closed to all." Memo. in Supp. of Mot. to Dismiss 10. It argues no "member of the public . . . received any accommodation not provided to [Plaintiffs]." *Id.* at 12. Plaintiffs, however, allege that Defendant's decision to temporarily close to the public was "undertaken with racially discriminatory animus for the purpose of denying African Americans access to a place of public accommodation." First Am. Compl. 10. Given Plaintiffs' factual allegations, the Court cannot say that Plaintiffs have failed to state a claim of intentional racial discrimination as a matter of law.

Congress, in passing § 2000a in its related provisions, "enacted a sweeping prohibition of discrimination or segregation on the ground of race, color, religion, or national origin at places of public accommodation whose operations affect commerce." *Daniel v. Paul*, 395 U.S. 298, 301 (1969). This "essential purpose" is viewed in light of "both its language and history . . . to remove discrimination in places of public accommodation." *Nesmith v. Young Men's Christian Ass'n of Raleigh, N.C.*, 397 F.2d 96, 98 (4th Cir. 1968). Thus, the law must "be accorded a liberal construction in order to carry out the purpose of Congress to eliminate the inconvenience, unfairness, and humiliation of racial discrimination." *United States v. Med. Soc'y of S.C.*, 298 F. Supp. 145, 151 (D.S.C. 1969). Likewise, § 1981 " 'was meant, by its broad terms, to proscribe discrimination in the making or enforcement of contracts against, or in favor of, any race.' " *Gratz*

*v. Bollinger*, 539 U.S. 244, 276 n.23 (2003) (quoting *McDonald v. Santa Fe Trail Transp. Co.*, 427 U.S. 273, 295-96 (1976)).

Assuming that Plaintiffs' allegations of Defendant's racially discriminatory animus are true, as this Court must under Rule 12(b)(6), the Court finds that Plaintiffs adequately state a claim upon which relief can be granted. The causes of action asserted by Plaintiffs turn largely on their allegations of *intentional* discrimination by Defendant at what is undisputedly a place of public accommodation, as well as in the formation of contracts for the goods and services offered by Defendant. *See Olzman v. Lake Hills Swim Club, Inc.*, 495 F.2d 1333, 1341 (2nd Cir. 1974) ("It should be needless to say that where a rule is made with discriminatory intent, that rule must fall regardless of any possible reasonable explanation that may in hindsight be proclaimed."); *cf. Buchanan*, 217 F.R.D. at 190-93 (denying a defendant's motion for summary judgment in a § 1981 action when the plaintiffs established a *prima facie* case of intentional racial discrimination in the defendants' refusal to accept checks from *all* customers).

Plaintiffs' allegation of intentional discrimination by Defendant, moreover, is supported by their allegations that Defendant's decision to temporarily close its restaurant during Black Bike Week disproportionately impacted African-American patrons after the restaurant remained open for business during the predominantly white Harley Week, which occurred less than a week prior. Plaintiffs thus allege plausible claims upon which this Court can grant relief.[8] Indeed, a

---

[8] The first opinion Defendant cites to support its motion is a three-paragraph, unpublished opinion from the Fifth Circuit, *Bonvillian v. Lawler-Wood Housing, LLC.*, 242 F. App'x 159 (5th Cir. 2007), which affirmed a motion for summary judgment in favor of a defendant after finding defendant was not in violation of the Fair Housing Act ("FHA"), 42 U.S.C. § 3604, where defendant closed a building to all potential tenants for repairs following Hurricane Katrina. *Bonvillian*, however, is inapplicable to Defendant's argument and, perhaps, more supportive of Plaintiffs' argument. In that case, the building was closed to all tenants during the repairs; however, that was not a reason the district court granted summary judgment. *Bailey v. Lawler-Wood Hous., LLC*, No. 05-5193, 2007 WL 101191, at *3 (E.D. La. Jan. 9, 2007). Instead, the district court found

determination that intentional racial discrimination, as a matter of law, does not exist when a restaurant temporarily closes its doors to all patrons during a predominantly African-American festival would ignore the subtle but significant factual questions that this action raises and conflict with the intent of Congress and the spirit of these causes of action in rooting out intentional racial discrimination. *See Olzman*, 495 F.2d at 1342 ("A principal question for resolution is thus whether the supposedly neutral rule was nothing more in reality than a smokescreen to cover the actual intent and effect or whether it was factually grounded in non-racial motivations . . . .")

### *DAUBERT* MOTION TO STRIKE EXPERT WITNESS REPORT AND TESTIMONY

Defendant finally moves to strike the expert witness report and trial testimony of Tucker W. Main, a restaurateur and food service and hospitality management consultant. Main issued a detailed report of his opinions regarding Defendant's decision to close Molly Darcy's on the Beach during Black Bike Week.

Defendant first argues the report is not reliable because the definition of "Black Bike Week" adopted by the expert was Thursday through Memorial Day, the following Monday. Defendant argues this is the wrong definition to be used by the expert in formulating his opinions because the

---

as matter of law that the plaintiffs' evidence of the effect of the evictions did "not establish a significantly greater discriminatory impact on members of a protected class." *Id.* Key to that case was that the plaintiffs only alleged a disparate impact (not any discriminatory intent) because "more disabled and African-Americans were affected" by the evictions. *Id.* (internal quotation marks omitted). This distinction is significant because the plaintiffs did not attempt to prove that the defendant acted with any discriminatory animus or intent, as Plaintiffs do here. Indeed, intentional racial discrimination *is* a violation of the FHA. § 3604(a) ("[I]t shall be unlawful . . . to otherwise make unavailable or deny[] a dwelling to any person because of race."). Furthermore, and relevant to the motion before this Court, the district court there—before it granted summary judgment in favor of the defendant—denied defendant's Rule 12(b)(6) motion to dismiss the plaintiffs' disparate impact claim. *Bailey v. Lawler-Wood Hous., LLC*, No. 05-5193, 2006 WL 148949, at *3-4 (E.D. La. Jan. 17, 2006). The court noted, "While plaintiffs have not alleged that defendants intentionally treated non-African-American tenants differently, their allegation that defendants' actions had a disproportionate impact on African-Americans, nevertheless, states a cognizable [FHA] claim." *Id.* at *4. This Court similarly finds Plaintiffs have stated a cognizable claim under Rule 12(b)(6).

record supports the fact that Black Bike Week is not confined to just those days, but rather is Tuesday through Memorial Day, and that the proper conclusion is that Defendant's restaurant was open for the first two days of Black Bike Week (Tuesday and Wednesday) every year since the restaurant opened. Defendant argues that, because the expert based his opinions on this information given to him by Plaintiffs' counsel, his opinions are not objective and not reliable.

Plaintiffs argue that Main's report is reliable based upon his personal knowledge and experience in the restaurant industry. They further contend that his testimony is relevant because it provides evidence of pretext. Plaintiffs note that, "[t]o help the jury assess a defendant's race-neutral justifications for potentially discriminatory conduct, courts have long observed that expert testimony comparing the proffered justifications with customary practices should be admitted." Memo. in Opp'n to Mot. to Strike 13, ECF No. 56. Plaintiffs argue that their definition as to the dates of Black Bike Week and the expert's assumption as to the dates are consistent with at least some of the testimony. *See id.* at 11. As Plaintiffs argue, and the Court agrees, Defendant will have the opportunity to cross-examine Main on his assumptions as to the dates of Black Bike Week, as well as Defendant's restaurant being open Tuesday and Wednesday every day since it opened in 2005.

Defendant also challenges the expert report and argues it is not relevant because "it has *never* been Defendant's contention that the days on which it chose to close over Memorial Day weekend would have been either the worst business days of the year had it opened, or even that the business would not have generated a profit had it opened." Memo. in Supp. of Mot. to Strike 8-9. Plaintiffs dispute this assertion and indicate the record says otherwise: an owner, John Riney, testified in a deposition that "[he] didn't think [they would] make any money," and that he believed

13

the restaurant would experience relatively low business levels.[9] Memo. in Opp'n to Mot. to Strike 15-16; John Riney Dep. 152, 201, ECF No. 56-6.

Federal Rule of Evidence 702, which governs the circumstances under which a witness can offer expert testimony, provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Under *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993), a court must assess whether the proffered expert testimony is relevant and reliable. The Fourth Circuit explained the assessment under Rule 702 as follows:

> The first prong of this inquiry necessitates an examination of whether the reasoning or methodology underlying the expert's proffered opinion is reliable—that is, whether it is supported by adequate validation to render it trustworthy. The second prong of the inquiry requires an analysis of whether the opinion is relevant to the facts at issue. Thus, an expert's testimony is admissible under Rule 702 if it rests on a reliable foundation and is relevant.

*Westberry v. Gislaved Gummi AB*, 178 F.3d 257, 260 (4th Cir. 1999) (citations and internal quotation marks omitted).

After reviewing Main's lengthy, thirty-six page report (with attachments), the Court finds some of this proffered expert's opinions challenged by Defendant are admissible while some are not. Tucker W. Main Expert Report, ECF No. 56-7. Opinions must be helpful to the trier of fact to understand the evidence or to determine a fact in issue. Any statement or opinion to the effect that

---

[9] Owner Thomas Snee indicated in his deposition that one of the "main reasons" for closing was "it's slow." Thomas Snee Dep. 110, ECF No. 56-5.

Main believed a particular reason given by Defendant was not the primary motivation for closing or that he does not find a reason of Defendant plausible is not admissible. Such statements or opinions are not helpful to the jury, and simply are an attempt to tell the jury what result to reach, and a waste of time. *See United States. v. Barile*, 286 F.3d 749, 760 (4th Cir. 2002).

Main, however, certainly has specialized knowledge regarding the customary business practices of seasonal restaurants like Molly Darcy's on the Beach. The customary business practices in the seasonal restaurant industry are relevant regarding whether the reasons given by the restaurant were not its true reasons, but were pretext for discrimination. Therefore, the following opinions are areas of appropriate inquiry for Main: opinions regarding (1) the customary business practices regarding profitability and business levels of seasonal restaurants during the period of time Molly Darcy's on the Beach was closed and any related analysis of Defendant's sales or profits, (2) the customary time for doing renovations of seasonal restaurants, and (3) the customary method of informing the public of closure. To the extent Main addresses these areas, his opinion is sufficiently relevant and reliable under Rule 702; *Daubert* is satisfied; and he is qualified to testify as an expert witness. Again, his testimony should not include his personal belief or opinion that Defendant's reasons were false or implausible, as doing so would not aid the jury and is simply an attempt to tell the jury what result to reach.

However, Main's opinions expressed in the report at item 7.3 (the employees' vacation schedules, and owner Thomas Snee's unavailability) and item 7.4 (traffic congestion or traffic considerations, and the employees' inability to get to work on time) are all matters that are not helpful to the jury. *See* Main Expert Report 6-7. The helpfulness to the jury inquiry is "whether the untrained layman would be qualified to determine intelligently and to the best possible degree the particular issue without enlightenment from those having a specialized understanding of the

subject." Fed. R. Evid. 702 advisory committee's note.  The expert's opinions on these matters do not aid the jury and, in some instances, simply are attempts to tell the jury what result to reach.

Regarding traffic congestion and the effect that the congestion had on closure, the Court notes Main is a restaurateur, not a traffic engineer.  In his report, Main acknowledges the traffic difficulties that existed and that his investigation revealed all of the restaurants and retail businesses expressed frustration about the congestion.  He even suggests carpooling.  However, the Court finds his opinion regarding whether it is a customary business practice to close because of traffic congestion is not helpful to the jury.  Indeed, the jury is perfectly capable of looking at a map showing street accesses, as well as considering any other facts ("construct of facts," as Main says) relevant to this topic and coming to their own conclusion as to whether traffic congestion played a part in the decision to close.  Likewise, the effects of Snee's unavailability and of the employees' vacation schedules are not so complex that an expert's opinion is needed to aid or help the jury.

Furthermore, Defendant challenges Main's placement, in his report, of an upward arrow on a graph produced by the Myrtle Beach Area Chamber of Commerce. Main Expert Report 9. Plaintiffs appear to concede this is confusing to some extent. Memo. in Opp'n to Mot. to Strike 17. Therefore, to the extent the graph is used demonstratively, the upward arrow should be deleted pursuant to Federal Rule of Evidence 403 ("The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . confusing the issues[ or] misleading the jury.")

## CONCLUSION

For the foregoing reasons, **IT IS THEREFORE ORDERED** that Defendant's motion to dismiss is **DENIED**, and that Defendant's motion to strike is **GRANTED IN PART** and **DENIED IN PART**.

**IT IS SO ORDERED.**

                                                s/ R. Bryan Harwell
                                                R. Bryan Harwell
                                                United States District Judge

September 26, 2012
Florence, South Carolina